IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ARIAN WADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 2931 |
| | ) | Judge Kendall |
| CHIEF JAMES COLLIER, JR., ET AL. | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

DEFENDANTS', CHIEF JAMES COLLIER, DEPUTY CHIEF MOBLEY,
LIEUTENANT JOSE MAZARIEGOS, OFFICER DEWAYNE WHEELER,
OFFICER THEODORE YANCY, AND THE VILLAGE OF MAYWOOD'S,
STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 56

1.  The Village of Maywood employed Plaintiff as a police officer.  (Complaint at Introduction)

2.  Defendants, Chief James Collier, Deputy Chief Mobley, Lieutenant Jose Mazariegos, Sergeant DeWayne Wheeler and Officer Theodore Yancy, are current or former employees of the Village of Maywood. (Complaint at ¶8).

3.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367. (Complaint at ¶ 5).

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all parties reside in this judicial district and all the events giving rise to the alleged claims occurred within the district. (Complaint at ¶ 6).

5.  In August 2005, the Board of Fire and Police Commissioners of the Village of Maywood ("Board") terminated Plaintiff's employment with the Village of Maywood after a hearing on charges filed by Chief Collier of the Maywood Police Department. (*See* Copy of Board's decision, attached hereto as Exhibit A).

6.  Plaintiff was represented by counsel at the hearing before the Board. (*See* Exhibit A).

7.  The Board found that Plaintiff was guilty of theft, official misconduct, making untruthful statements, insubordination, failure to obey the order of a superior officer, and failure to report police information. (*See* Exhibit A).

8.      Plaintiff appealed the Board's decision to the Circuit Court of Cook County and the First District Appellate Court. (*See* Copy of Appellate Court Opinion dated October 25, 2007, attached hereto as Exhibit B).

9.      The Circuit Court of Cook County and the First District Appellate Court upheld the Board's decision. (*See* Exhibit B).

10.     Plaintiff was represented by counsel before the Circuit Court of Cook County and the First District Appellate Court. (*See* Copy of Complaint for Administrative Review, attached hereto as Exhibit C and copy of cover page of Appellant's Brief, attached hereto as Exhibit D).

Respectfully submitted,

CHIEF JAMES COLLIER, DEPUTY CHIEF MOBLEY, LIEUTENANT JOSE MAZARIEGOS, OFFICER DEWAYNE WHEELER, OFFICER THEODORE YANCY, and the VILLAGE OF MAYWOOD

By:   /s/ Kathleen T. Henn
          Kathleen T. Henn

Lance C. Malina
Kathleen T. Henn
KLEIN, THORPE & JENKINS, LTD.
20 N. Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400

**BEFORE THE BOARD OF FIRE AND POLICE COMMISSIONERS
OF THE VILLAGE OF MAYWOOD, ILLINOIS**

| | |
|---|---|
| IN THE MATTER OF THE CHARGES FILED | ) |
| AGAINST ARIAN WADE, A POLICE OFFICER | ) |
| AND MEMBER OF THE MAYWOOD POLICE` | ) |
| DEPARTMENT | ) |

### FINDINGS AND DECISION

**THIS MATTER COMES ON** to be heard by the undersigned Board of Fire and Police

Commissioners of the Village of Maywood, Illinois, upon the filing of written charges against

Police Officer Arian Wade (hereinafter referred to as "Respondent") by James E. Collier, Jr.,

Chief of the Maywood Police Department (hereinafter referred to as "Complainant"), wherein

said Respondent was charged with misconduct involving violations of certain rules and

regulations of the Maywood Police Department as more specifically set forth in said Charges, as

amended, which have been  incorporated herein by reference.  This Board commenced a public

hearing on said Charges on or before the10th day of May, 2005, pursuant to notice as required by

law—said hearing having been continued, from time to time, by agreement of the parties hereto.

This Board having heard and reviewed the testimony and other evidence presented at said

hearings, and after due deliberation and being fully advised in the premises, FINDS:

    1.    Respondent was at all times mentioned herein and pertaining hereto a member of

the Police Department of the Village of Maywood, Illinois, assigned to duties as a police officer.

    2.    This Board has jurisdiction of the subject matter of said Charges and the persons

of the parties hereto.

    3.    All notices and other things required to be done prior to delivery and after said

1



hearing have been done.

4.     Throughout the hearing, the Complainant and the Respondent appeared in person and were represented by legal counsel of their own selection.

5.     The substance of Second Amended Statement of Charges is that, due the Respondent's criminal indictment and the bond issued in relation thereto, the Respondent is unable to perform his assigned duties as a patrol officer since the bond precludes his possession of firearms, his association with other specified members/officers of the Maywood Police Department and a direction not to enter upon the premises of the Maywood Police Department without the express consent/directions of the Maywood Police Chief.  In addition, the Respondent was charged with theft, official misconduct, conversion/withholding of property, as well as the failure to obey an order issued by his superior officer, Lt. Mazariegos.  The Respondent was charged with the failure to cancel a report of a stolen weapon from the LEADS system and for disobeying the orders of superiors related to the return of the subject weapon to the police department so that it could be properly evaluated and canceled from the LEADS list of stolen weapons.  Finally, the Respondent was charged with making false/untrue statements related to the aforementioned missing weapon, some missing mobile radios in his possession and matters related to bulletin boards within the Maywood Police Department for the posting of departmental information for its members.

6.     Based upon the evidence presented at the hearing, the Board found the Respondent not guilty of the allegations of misconduct as specified in the Third, Fourth and Tenth Charges contained within the Second Amended Statement of Charges.  The basis for its decision follows.

The Third Charge alleges that the Respondent wrongfully converted property, Police

2

Department Radio No. 5, and failed to comply with a departmental directive issued by Police Lieutenant Jose Mazareigos directing the return of the radio to the police department. While the Board does not question the testimony of Lt. Mazareigos that he prepared a memo (Chief's Ex. 3, dated May 5, 2005) and posted it on one or more of the bulletin boards located at three different places within the police department, a review of Chief's Exhibits 14, 15 and 16 (Photos of the bulletin board's in question) reveals a very inefficient and somewhat suspect method of disseminating information to the members of the department. The photos of the bulletin boards show that the boards are quite cluttered with both current and old information as well as posters and other documentation not necessarily related to the conduct of the department's business. The evidence also indicates that the department, subsequent to the dates in question in this matter, has designated a specific bulletin board for the posting and dissemination of official departmental business and that bulletin board is enclosed in a glass case and locked.

The Respondent's fellow officer, Wayne Welch, when asked whether or not he had seen the memo in question (Chief's Ex. 3) testified that "He could not recall every seeing the document."

The Complainant's citation to the departmental rule prohibiting the conversion of property to their own use does not appear to be applicable as to the facts presented in this case. The rule (Chapter 14, Section 14.1.1, Subsection 6.6), in this board's opinion, applies to situations wherein a police officer attempts to convert property or evidence gathered by the department as part of a criminal investigation-- property which ordinarily would be inventoried and placed into the department's evidence locker. The rule does not apply to the taking of departmental equipment for one's personal use. As will be discussed later, the Respondent's taking and keeping of the radio in question was determined to be an act of theft on the

3

Respondent's part.

The Fourth Charge alleges that the Respondent was insubordinate in that he failed to comply with the directive of Lt. Mazariegos as set forth in the Chief's Exhibit 3. For the reasons set forth above, the board concluded that the Respondent was not guilty of disobeying the directive of Lt. Mazariegos to return Mobile Radio No. 5 since the board concluded that the evidence did not clearly establish that the order contained within the directive was actually received and understood by the Respondent.

Similarly, the board concluded that the Respondent was not guilty of making a false or untrue statement (Tenth Charge), during the course of his administrative interview, when he took the position that, until recently, there were no bulletin boards within the department for supervisors to post information for the officers of the department. While it is clear that the department had, at the time in question, three different bulletin boards located throughout the department's facility, nothing indicates that any single one of the boards was reserved strictly for the dissemination of official departmental memoranda. The evidence shows that the bulletin boards in question were, again, quite cluttered and held not only departmental documentation of various import but also other materials not necessarily related to the conduct of departmental business.

The evidence does show, as it relates to the First Charge, that the Respondent is currently a named defendant in a pending criminal case in Cook County. The record shows that, since February 1, 2005, the Respondent has been released on bond but has been unable to perform his duties as a Maywood Police Officer due to the restrictions place upon the Respondent by the court as a condition of his release—see Chief's Exhibit 1 and 2. The bond in questions specifically prohibits the Respondent from possessing firearms, having contact and/or

4

communications with three of his fellow officers and members of the Maywood Police Department. In addition, the bond prohibits his entry upon the premises of the department without the permission of the Maywood Police Chief. In order to fulfill the responsibilities of a Maywood Police Officer, according to the testimony of Chief James Collier, it is mandatory that an officer be able to possess and use his or her duty firearm and be able to communicate and assist his or her fellow officers. The bond effectively prevents the Respondent from being able to carry out the necessary job functions of a Maywood Police Officer.

Within the Second Charge, the Respondent was charged with theft and official misconduct resulting from his possession of two Village of Maywood Portable Radios—one belonged to the Maywood Police Department (Radio # 5) and a similar radio belonging to the Maywood Fire Department. Lt. Mazareigos testified that the police radio, # 5, was specifically listed on a Sales Order Form (Chief's Ex. 8), and had a value of $539.00. As shown within Chief's Ex. 11, the fire department radio found in the Respondent's home had a value of $560.00 and the aggregate value of both missing radios was $1099.00.

The evidence shows that a third radio, marked as # 10 and belonging to the Maywood Police Department, was in the possession of the Respondent and was specifically assigned to him on December 27, 2004.

The fact that the Respondent was in possession of police radio #5 and the missing fire department radio came to light when the Cook County State's Attorneys Office executed a search warrant of the premises occupied by the Respondent and his family on or about January 21, 2005, as part of an on-going criminal investigation. The Respondent's testimony regarding his possession of radio # 5 and the location where it was found within his residence lacks credibility. While the Respondent denied, during his administrative interview, knowing that

5

police radio # 5 was in his house and later testified during this hearing that the radio was found in a dresser drawer in his bedroom after being placed there by his wife, the record indicates that both of the missing radios (police #5 and the fire department radio) were discovered in plain view by the investigators executing the search warrant.  Mr. Peter Caira, one of the investigators, testified that he was present during the search of the Respondent's premises on January 21, 2005, and that both the radios in question, Motorola Model HT 750's, were found on top of a small dresser,  at the back of said dresser near a mirror.  The investigator identified the missing radios as the two radios found on the Respondent's dresser at Respondent's residence.

While the Respondent's wife testified that she had placed a third radio in a dresser drawer in their bedroom, on cross examination she testified that she had picked up after her husband after he had left his uniform and other related items/equipment in the bedroom.  The radio she placed into the dresser was equipped with a microphone -that radio was different from the two found by the investigators on top of the dresser.

With respect to radio # 5, the evidence indicates that it was missing from the police department's inventory of radios from at least May 5, 2004 (see Mazareigos memo, Chief's Ex. 3), with it then being found in the possession of the Respondent as of January 21, 2005, approximately seven (7) months later.

For the record, the board members did not find much of the testimony provided by Denard Wade, a witness for the Respondent, credible.  Based upon the witnesses demeanor before the board and the vague and argumentative manner in which he responded to certain questions contributed to his lack of credibility.

With respect to the missing fire department radio found in the possession of the Respondent on January 21, 2005, the record indicates that the Respondent came into the initial

6

possession of the radio legitimately when he was assigned by his brother, Denard Wade, then Acting Chief of the Maywood Fire Department, to serve as a Director of the Community Emergency Response Team (CERT). Denard Wade testified that the fire department radio was issued to his brother, a police officer, to improve communications between the police and fire department during an emergency. Denard Wade served as Acting Chief for approximately six (6) months, commencing during the month of March 2003. The testimony indicates that the Respondent served as a director of CERT for a short period of time (approx. 6 months) while the program was in its infancy and suffering from a lack of funding. The evidence indicates that the Respondent was no longer serving as a director of CERT as of August 2003, shortly after Denard Wade was removed as the fire department's acting fire chief. As both a police officer and former director of the CERT program, it is the conclusion of this board that the Respondent new the value of the radio in question, that it was not issued to him for his personal use and that there was an existing obligation to return the tactical radio to the fire department for its use and the protection of the residents of Maywood. The board members also conclude that his retention of the missing radio for such a lengthy period of time gives a clear indication of his intent to retain possession of the radio for his own personal use.

Based upon the foregoing and other evidence present in the record, this board finds and determines by clear and convincing evidence that the actions of the Respondent related to his possession of both the missing police radio # 5 and the fire department (CERT) radio constitute both theft and official misconduct as provided within the Illinois Criminal Code Sections 16-1 and 33-3, as well as departmental rule Chap. 14.1.1 regarding obedience to laws, responsibility to know laws and procedures and adherence to departmental rules.

The department also charged the Respondent with making an untrue statement, during the

7

course of his administrative interview, when he denied knowing that the missing police department radio (# 5) was in his apartment in January 2005 (Ninth Charge). Not only does the record indicate that the Respondent denied knowing the radio was in his residence during January of 2005, he was also untruthful during his hearing when he testified that the radio in question (#5) was inside a dresser drawer and was placed there by his wife. Again, citing to the testimony of one of the investigators for the State's Attorney's Office, a Mr. Caira, the missing police radio was in plain view on the top of a dresser in Respondent's bedroom. Again, while his wife testified to placing a radio inside a dresser drawer, the radio found in the dresser had a microphone attached to it and was not the missing police radio # 5. The board finds specifically that the Respondent's testimony that he was unaware of the missing radio # 5 was at his personal residence to be both untruthful and incredible given that it was found in plain view on the top of a dresser in the Respondent's bedroom. As such, the misconduct of the Respondent does constitute untruthfulness and violates the departmental rules cited within the Ninth Charge.

With respect to the Fifth, Sixth, Seventh and Eighth Charges, the record shows that the Respondent was the owner of a Glock Model #19 and the weapon was reported as stolen by the Respondent on or about June 18, 2005. Denard Wade, the Respondent's brother, testified that he too reported two firearms as stolen/missing on or about March 30, 2004. He testified that after reporting his weapons as stolen ( a 9 Millimeter and a 357), he found the Respondent' Glock Model # 19 and returned it to him. While the Respondent did not recall exactly when the weapon was returned to him, he does admit talking to a fellow police officer, a Valerie Hastings, on or about January 6, 2005, and offering to either loan or sell the weapon to her so that she would have a weapon in order to complete her scheduled, up-coming fire arms training as part of her basic law enforcement training course.

8

Valerie Hastings testified that she had been appointed to the Maywood Police Department, as a probationary police officer, as of January 3, 2005. She testified that on January 6, 2005, the Respondent introduced himself to her. During their discussion, she informed the Respondent that she needed to purchase a firearm and that he advised her that a Glock would be a good purchase. He also told her he had a Glock that she could either borrow or purchase. According to her testimony and her statement (see Chief's Ex. 17), Officer Hastings contacted the Respondent on January 14, 2005, and told him she would like to purchase the Glock and that she could pay him on January 21, 2005, her next scheduled payday. She also testified that, by agreement, she and the Respondent met at her home during the morning hours of January 15, 2005, at which time the Respondent delivered the weapon and went over some of the fundamentals regarding the use of the weapon. The record indicates that Officer Hastings was in possession of the Respondent's Glock Model 19 firearm from January 15, 2005, until she turned the weapon over to Deputy Chief Donald Mobley, of the Maywood Police Department on January 24, 2005.

While the Respondent denied turning over the weapon to Officer Hastings as of January 15, 2005, the board chooses to believe the testimony of Officer Hastings. According to the testimony of the Respondent, his wife and his brother, the reason he was unable to deliver the weapon to Officer Hastings during the morning hours of January 15, 2005, was that he was involved with his wife and the conduct of a birthday party for his child. The impression given by the testimony of the Respondent, his wife and his brother, was that the party at the skating rink began as early as 10:30 a.m., on the date in question. A rebuttal witness presented by counsel for the Complainant, a Ms. Sandra Highley, testified that she was the manager of the roller skating rink, located in Lombard, Illinois. According to her testimony, the roller rink, during the month

9

of January 2005, never opened its doors to the skating public before noon on any date it was open for business.

The record shows that on January 17, 2005, even though the Glock 19 had been in his possession for some period of time prior to that date, the Respondent chose to notify the Maywood Police Department through its communication center that the weapon had been recovered.  His initial conversation was with a dispatcher, last name of Powell, whom he advised that he now had possession of the weapon previously reported as stolen.  According to the Respondent's testimony, he was initially advised by Dispatcher Powell that she would remove the weapon from the LEADS system where it had been reported as stolen leaving him with the impression that nothing else was required on his part..  Dispatcher Larissa Cunningham testified that she had listened to a recording of the initial call from the Respondent and that she called the Respondent and told him that he had to physically turn the weapon into the department to cancel the LEADS stolen weapon report.  According to Ms. Cunningham, the Respondent returned her call indicating that he understood the directive to bring the weapon in and giving the impression that he was still in possession of the weapon.  The record indicates, by the testimony of Police Officer Wayne Welch, that the reason a previously reported missing or stolen weapon must be turned into the police department prior to its removal from the LEADS system is that a ballistics test is conducted on the weapon to insure that, during the time it has been recorded as missing or stolen, it has not been used in the commission of a crime.

While the Respondent claims that he is not a fully certified LEADS operator and didn't fully understand the procedures involved with the cancellation of a LEADS report regarding stolen weapons, it is clear from Dispatcher Cunningham's and the Respondent's own testimony that he was directed by Dispatcher Cunningham to bring the weapon into the department on

10

January 17, 2005.

   Deputy Chief Donald Mobley testified that he became aware of the Respondent's report indicating that he was back in possession of the stolen Glock Model 19. He testified that he met with the Respondent on January 18, 2005, and that he advised the Respondent that he was aware of the fact that he had reported that the weapon was back in his possession and that the Respondent was seeking to cancel the LEADS report. Dep. Chief Mobley testified that he ordered the Respondent to get the gun and bring it in, to do an inventory and prepare a general case report. According to the testimony, the Respondent was on duty when given the orders and said "Ok" indicating he would comply. According to Dep. Chief Mobley, Respondent, during their meeting on January 18, 2005, told him that the weapon (Glock Model 19) was at his home knowing that he had already delivered the weapon to Officer Hastings and that it was no longer located within his residence. The witness also testified that the Respondent did not obey his order. The Respondent did not return the weapon to the department nor did he fill out the case report.

   The record shows that on January 21, 2005, the Respondent was arrested as part of an on-going criminal investigation. On that date, the Respondent met with Deputy Chief Mobley and Police Chief James Collier. The Respondent, as part of the department's efforts to confiscate all weapons, including his service revolver, was asked where the Glock Model 19 was. The Respondent again reported, according to both Chief Collier and Dep. Chief Mobley, that he had possession of the weapon and that it was at his home. The record indicates that the Respondent never turned in the Glock and that it was subsequently turned in by Officer Hastings on Monday, January 24, 2005.

   Based upon the foregoing and other evidence as contained within the hearing record, it is

the determination of this board that the Respondent is guilty of the misconduct as alleged in the Fifth, Sixth, Seventh and Eighth Charges. The Respondent, after being advised that a weapon reported as stolen to the LEADS system must, upon recovery, be brought into the department before the report can be canceled by LEADS, did not obey the order of the dispatcher or his superior officer, Dep. Chief Mobley, to return the weapon as part of the clearing process. As such, he was in violation of the Department of State Police rules governing the LEADS system related to the report of recovery of a stolen weapon. His failure to bring the weapon in after receiving directions to do so from the dispatcher and the deputy chief constitutes insubordination and a violation of departmental rules and Department of State Police rules as specified in the Fifth, Sixth and Seventh Charges set forth in the Second Amended Statement of Charges filed herein.

In addition, the Respondent is found guilty of making untruthful statements and failure to report police information (Eighth and Sixth Charges respectively) when he told Dep. Chief Mobley on January 18, 2005, and again on January 21, 2005, that the weapon he had reported stolen was at his home knowing that he had already delivered the weapon to another police officer. In addition, the record clearly shows that the Respondent had come into possession of missing/stolen Glock on or before January 6, 2005, and chose not to report the recovery of the weapon until after he decided to sell the weapon to Officer Hastings.

As part of this hearing, the board did review the testimony and the records submitted in aggravation and mitigation prior to determining the discipline to impose upon the Respondent.

7.     It is the decision of this Board that Respondent's misconduct constitutes a substantial shortcoming and IT IS THEREFORE ORDERED that the Respondent be terminated from his employment as a police officer with the Maywood Police Department. The Chief of the

Maywood Police Department and other appropriate corporate authorities are directed to implement this order forthwith.

Signed at Maywood, Illinois, this _____ day of _____, 2005.

_____

_____

_____

_____

_____

Being a Quorum of the Maywood Board of
Fire and Police Commissioners

13

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

FOURTH DIVISION
October 25, 2007

No. 1-06-2911

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ARIAN WADE, | ) | Appeal from the Circuit Court of Cook County, Chancery Division. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05 CH 14832 |
| | ) | |
| BOARD OF FIRE AND POLICE COMMISSIONERS THE VILLAGE OF MAYWOOD, ILLINOIS; CHARLES ANDERSON, individually and as chairman of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois; GLORIA CAY, LORETTA COLLINS, REUBEN ROLLE, and JEFFREY LOWENTHAL, individually and as members of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois; and JAMES E. COLLIER, JR., Chief of the Maywood Police Department. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Philip Bronstein, Judge Presiding |
| Defendants-Appellees. | ) | |

ORDER

Defendant James E. Collier, Jr., Chief of Police for the Village of Maywood, filed 11 charges against plaintiff, alleging that plaintiff violated rules and regulations of the Maywood police department, as well as state laws. Generally, the complaint alleged that plaintiff was unable to act as a police officer due to the conditions of his bond after he was arrested; that he failed to remove his gun, which was reported as stolen, from a state database; that he was insubordinate when he failed to follow certain orders; that he lied about the gun's location; and

EXHIBIT
B
tabbies

1-06-2911

that he lied about knowing that Village police radios were in his apartment. The Board found

plaintiff guilty of eight of the 11 charges and decided to terminate his employment. The trial

court affirmed the Board's decision.

## I. FACTS

### A. First Charge: Inability to Act as a Police Officer

Plaintiff was employed as a Maywood police officer when he was arrested on January 21,

2005, in connection with a narcotics case in Cook County. Plaintiff was released on bond, which

prohibited him from possessing firearms, having contact or communicating with three of his

fellow officers, and entering department premises without the permission of the police chief.

Maywood Police Chief James Collier testified that to perform one's duties as a police officer,

one has to be able to carry a firearm and communicate with other officers.

### B. Second Charge: Theft of Village Radios

The day of plaintiff's arrest, Cook County State's Attorney investigators executed a

search warrant of plaintiff's apartment. Peter Caira, an investigator with the Cook County

State's Attorney, testified that the warrant authorized him to search and secure "scanners." He

found two Motorola HT750 radios belonging to the Village of Maywood on top of the short

dresser in plaintiff's bedroom: one police radio and one fire radio. One (serial number

672TCEF402) had the number 5 scratched on the front. A third radio was found in the top

drawer of the same dresser. Caira believed that the radios, which had an aggregate value of

$1099, were the property of the Village of Maywood, so he took them for safekeeping.

Tammy Wade, plaintiff's wife, testified that before the police searched their house on

January 21, there was a radio on top of the dresser from a special assignment that plaintiff was

1-06-2911

working on with his brother and a second radio that she had placed in a dresser drawer.

Plaintiff testified that as of January 21, 2005, he had two Village of Maywood radios in his possession: his police radio and a fire radio. His brother, Denard Wade, then-acting fire chief, issued plaintiff the fire radio because he was a director of the Community Emergency Response Team (CERT). Plaintiff resigned from his position as director at about the same time his brother stopped acting as fire chief, but he did not return the fire radio because no one asked him to return it. He never reported to anyone at the police department that he had a fire radio with a police band. Plaintiff testified that he was not aware that he had police radio 5 until opposing counsel produced paperwork providing that the radio was seized from his house. He testified that radio 5 was found inside a dresser drawer, where his wife put it.

Denard Wade, plaintiff's brother, testified that, beginning in March 2003, he was acting chief of the fire department for a period of six months. During that time, the village manager contacted him about the CERT program. He chose plaintiff to be a director of the program and issued him a fire radio. Plaintiff served as director for the duration of Denard's six-month tenure as acting chief. He did not recall asking plaintiff to return the radio.

John Cadigan, the current fire chief, testified that the fire radio was never issued to plaintiff, nor did plaintiff contact the fire department to inform them that he had their radio. Cadigan did not know whether Denard Wade issued a fire radio to plaintiff.

Chief Collier testified that plaintiff never told him that he was involved in CERT. Collier attended a meeting for department heads where plaintiff did a presentation on CERT, but plaintiff did not identify himself as a director.

C.  Fifth and Sixth Charges: Failure to Cancel Stolen Property in LEADS

-3-

1-06-2911

Plaintiff testified that he owned a Glock that he reported missing to the Maywood Police Department on June 18, 2004. Denard Wade, plaintiff's brother, testified that on March 30, 2004, he also filed a report with the Village of Maywood police department about two stolen guns, a nine-millimeter and a .357. Later, he found plaintiff's Glock and returned it to him.

Plaintiff testified that he could not remember what date before January 6, 2005, that the Glock was returned to him. He did not report that he recovered the weapon because there was an investigation underway and he expected the detective to follow up. He intended to disclose his recovery of the gun to the detective assigned to the case, but no one ever contacted him. He wanted to keep it coordinated with the follow-up investigation so the investigator knew everything came together.

Plaintiff testified that on January 6, 2005, he spoke with probationary Officer Valerie Hastings, who had firearm training coming up. She said that she was planning to buy a Glock 19, the same type of gun that plaintiff owned but was not using. He offered to lend her his Glock until she got money to purchase another gun.

On January 17, plaintiff called the Maywood police station to report that the Glock had been recovered. He spoke to dispatcher Powell and advised her that he had the gun that was reported stolen and asked what he needed to do to get it removed from the Illinois Law Enforcement Agencies Data System (LEADS), a computerized telecommunications system. She responded that she would take it out of the system and that he did not need to bring in the gun. He was familiar with LEADS but was less than fully LEADS certified. He did not know how to enter and remove a gun in LEADS; that was the dispatcher's responsibility.

Dispatcher Larissa Cunningham testified that she listened to the tape of plaintiff's phone

1-06-2911

call to dispatch.  She called plaintiff and left a message that he had to bring the gun to the station before it could be cancelled from LEADS.  Plaintiff called back 20 minutes later, and Cunningham reiterated that he had to bring the gun in before it could be cancelled from LEADS. Plaintiff said okay.

Plaintiff testified that at 11:15 or 11:30 a.m. on January 17, he delivered the gun to Hastings at her residence.  At 11:40 a.m., he called the station and spoke to dispatcher Powell, who asked whether his gun was a Glock or Smith and Wesson.  Another dispatcher, Larissa Cunningham, called him at 11:54 a.m. and told him to bring the gun to the station.  He was not in the area, so he went to the station at 2 p.m.  When plaintiff arrived, he called Hastings and told her to bring the gun to the station.  She did not bring the gun in, so he left her messages that day and the next.

Valerie Hastings testified that she was a probationary officer when plaintiff introduced himself on January 6, 2005.  She told him that she had still not purchased a gun and asked what type of gun he suggested she use.  He said that a Glock would be a good choice and offered her a used Glock for loan or purchase, as he had purchased a new weapon.  She called him on January 14, 2005, and he brought the gun to her house the next morning.  She was certain that they met on Saturday, January 15.  Monday, January 17 was Martin Luther King Day, so she did not have class at the academy, but she would need the gun for the rest of the week.

Plaintiff, however, testified that he would not have been able to deliver the weapon to Hastings on January 15 because he and his wife were having a birthday party for their daughter. He went to the party at 11 a.m. and left at 2 p.m.  He was certain he saw Hasting on January 17 because she did not go to the academy that day since it was a holiday.  He presented a DVD of

1-06-2911

the birthday party to solidify the timing. It showed that the party began at 1:13 p.m. on January 15.

Tammy Wade testified that at 11 a.m. on January 15, she and plaintiff hosted their daughter's birthday party at a skating rink in Lombard. Plaintiff was present the whole day until he left for work at 2 p.m. Similarly, Denard testified that he attended his niece's birthday party on January 15, 2005, which began at 10:30 or 11 a.m. Plaintiff was there when he arrived.

The Chief called Sandra Highley, an employee of the skating rink in Lombard, in rebuttal. She testified that the rink was never open to the public before noon in January 2005. Her records did not indicate that the Wade family scheduled a birthday party for January 15, 2005, but that did not necessarily mean that the Wade family did not go there.

### D. Seventh Charge: Insubordination

Plaintiff testified that he spoke to Deputy Chief Donald Mobley about the gun at 2:50 p.m. on January 18, 2005, before he dressed for work. He testified that Mobley instructed him to call Wayne Welch and get the paperwork filled out. After roll call that day, he was dispatched to a fight. He testified that if he had been ordered to go home right after roll call, the dispatcher would not have given him the fight call.

Mobley testified that he learned of plaintiff's call to dispatch on January 18, 2005. When plaintiff arrived for work, Mobley called plaintiff into his office to discuss the gun. Mobley told plaintiff to go home after roll call, bring the gun to the station to be inventoried, and write a general case report. Plaintiff, who was on duty when the conversation took place, said okay. However, plaintiff did not bring the gun to the station or complete a report.

### E. Eighth and Ninth Charges: Making False Statements

1-06-2911

Chief Collier testified that when plaintiff turned in his service weapon on January 21, 2005, the day of his arrest, Mobley asked where the gun was that plaintiff was supposed to bring in. Plaintiff said that it was at home, even though it was in Hastings's possession.

Plaintiff denied telling Mobley that the Glock was at his home when they took his service weapon from him.

Furthermore, during his formal interrogation, plaintiff denied knowing that there was a Village radio, other than his assigned police radio, in his apartment in January 2005.

### F. The Board's Findings

The Board found plaintiff guilty of eight of the 11 charges: inability to act as a police officer due to the bond restrictions (first charge); theft and official misconduct in violation of section 16-1 of the Criminal Code (720 ILCS 5/16-1 (West 2004)) (second charge); failure to cancel stolen property in LEADS (fifth and sixth charges); insubordination for failing to follow orders relating to cancelling the property in LEADS (seventh charge); making false statements regarding the gun's location and plaintiff's knowledge that there were Maywood radios other than his assigned police radio in his apartment (eighth and ninth charges); and conduct unbecoming an officer (eleventh charge). The Board decided to terminate plaintiff's employment.

### II. ANALYSIS

On appeal, we review the administrative agency's decision and not the circuit court's determination. *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 365 (2005). To review an administrative agency's decision regarding discharge, a court must apply a two-step process. *Valio v. Board of Fire and Police Commissioners of the*

1-06-2911

*Village of Itasca*, 311 Ill. App. 3d 321, 328 (2000). First, the court must determine whether the

agency's finding of guilt is contrary to the manifest weight of the evidence. *Valio*, 311 Ill. App.

3d at 328. Second, the court must determine if the findings of fact provide a sufficient basis for

the agency's conclusion that there is cause for discharge. *Valio*, 311 Ill. App. 3d at 328-29.

The factual findings of an administrative agency are considered *prima facie* true and

correct (735 ILCS 5/3-110 (West 2004)), and a reviewing court will only reverse if the

administrative decision is against the manifest weight of the evidence. *Carlisle Investments*

*Group, Ltd. v. White*, 366 Ill. App. 3d 876, 883 (2006). An agency's decision concerning

whether cause exists is reversible if it is arbitrary, unreasonable, or unrelated to the requirements

of the service. *Launius v. Board of Fire and Police Commissioners of the City of Des Plaines*,

151 Ill. 2d 419, 435 (1992). Finally, we exercise an independent review of an agency's

conclusions of law. *Barber v. Board of Trustee of Village of South Barrington Police Pension*

*Fund*, 256 Ill. App. 3d 814, 818 (1993).

A. Conditions of Bond

Plaintiff first contends that the Board's conclusion that the conditions of his bond

prevented him from carrying out the necessary functions of an officer was against the manifest

weight of the evidence. He claims that because other officers who were criminally charged and

could not carry a weapon were put on administrative leave without pay until the criminal case

concluded, he should have been similarly "accommodated." During the administrative

proceeding, plaintiff testified about one particular officer who was placed on administrative

leave while his criminal case was pending. However, there was no evidence that the other

officer's bond conditions precluded him from communicating with fellow officers or setting foot

-8-

1-06-2911

on the Maywood police premises, as plaintiff's bond did.

B. The Radios

Plaintiff argues that the finding of guilty of theft and official misconduct for possessing the two radios was against the manifest weight of the evidence.

Plaintiff first contends that the second charge, which alleged theft of the radios, did not have the language that plaintiff intended to "permanently deprive" the village of the radios. See 720 ILCS 5/16-1(a)(1), (5)(A) (West 2004). Plaintiff cites a criminal case, *People v. Cole*, 131 Ill. App. 3d 980 (1971), in support of his argument. It is well-settled, however, that in administrative proceedings, a complaint need not state the charges with the same refinements and selectivity as a complaint in a court of record. *Grissom v. Board of Education of Buckley-Loda Community School District No. 8*, 75 Ill. 2d 314, 323 (1979). An administrative complaint need only reasonably apprise the party of the case against him so that he will be able to intelligently prepare his defense. *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279, 284 (1993). Here, the complaint related the facts upon which the charge was based. Also, significantly, plaintiff has not argued that he was not able to intelligently prepare his defense. Because the charge was sufficient was fully adequate to advise plaintiff what he would have to defend against, we reject his contention.

He also contends that the search warrant, pursuant to which the radios were found and kept for safekeeping, was defective, because it concerned financial documents, not radio scanners or portable radios. Plaintiff has waived the argument because cites no authority in support of his argument that the radios were improperly seized or that the exclusionary rule applies in administrative proceedings. See *Feret v. Schillerstrom*, 363 Ill. App. 3d 534, 541

-9-

1-06-2911

(2006).

Waiver notwithstanding, "the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *McCullough v. Knight*, 293 Ill. App. 3d 591, 596 (1997). *Grames v. Illinois State Police*, 254 Ill. App. 3d 191 (1993), and *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339 (2002), both rejected the application of the exclusionary rule in administrative hearings involving discharges from employment. "To extend the rule would effectively prohibit the introduction and consideration of relevant and probative evidence and hamper the Board's ability to enforce departmental rules and punish inappropriate conduct." *Grames*, 254 Ill. App. 3d at 201. Even assuming, *arguendo*, that the radios were improperly seized, the hearing did not determine the guilt or innocence of plaintiff as in a criminal proceeding; instead, it was an administrative proceeding evaluating whether his conduct amounted to a violation of departmental rules. *Grames*, 254 Ill. App. 3d at 201-02. Therefore, the exclusionary rule does not apply.

In a similar vein, plaintiff takes issue with the Board's finding that radio 5 was found "in plain view." Plaintiff, citing *People v. Humphrey*, 361 Ill. App. 3d 947 (2005), argues that the Board misapplied the plain-view doctrine because it only applies to warrantless searches. Plaintiff misunderstands the Board's finding, however. It did not apply the doctrine of plain view; rather, it found plaintiff's testimony that he was unaware of missing radio 5 at his residence "to be both untruthful and incredible given that it was found in plain view" on a dresser in his bedroom.

Plaintiff also argues that the March 21, 2005, report written by Jose Mazariegos was inaccurate and incredible because it listed the wrong serial number for radio 5 and did not

1-06-2911

include any reference to Denard Wade being questioned about the fire radio. We note, however, that Mazariegos testified as to these matters and was cross-examined. We will not substitute our judgment for that of the Board.

The evidence established that the fire radio initially came into plaintiff's possession legitimately, when Denard appointed plaintiff a director of the CERT program. However, plaintiff's tenure as director was short-lived, and after he resigned, he retained possession of the fire radio for more than a year before Cairo took it for safekeeping. The Board found that plaintiff knew the fire radio's value that it was not issued for personal use, and that he had an obligation to return the radio to the fire department, and concluded that plaintiff's retention for such a long period of time clearly indicates that he intended to keep the radio for his own personal use.

Furthermore, radio 5 was documented as missing from the police department's inventory from at least May 5, 2004, seven months before State's Attorneys investigators executed the search warrant. While plaintiff's wife testified that radio 5 was in the dresser drawer, Cairo testified that both of the radios were on top of the dresser. In addition, although plaintiff's wife testified that radio 5 had a microphone attached to it, other evidence indicated that the radio that she placed in the dresser, which was equipped with a microphone, was different from the two found by the investigators on top of the dresser.

Because Cairo found the radios in plain sight, the Board thought plaintiff's testimony that his wife found the radio in a dresser drawer lacked credibility. It also noted that during his administrative review, plaintiff denied knowing that police radio 5 was in his house. While plaintiff's and Mrs. Wade's testimony differed from Cairo's in this respect, it is not our function

-11-

1-06-2911

to reassess witness credibility or resolve conflicting evidence. *Jackson v. Board of Review of Department of Labor*, 105 Ill. 2d 501, 506 (1985); *Ulysse v. Lumpkin*, 335 Ill. App. 3d 886, 893 (2002). "We are charged only with determining whether the findings of fact are supported by the manifest weight of the evidence." *Ulysse*, 335 Ill. App. 3d at 893. Furthermore, the Board found that plaintiff's testimony regarding his possession of radio 5 and where it was found in his residence to be "untruthful and incredible," and it "did not find much of the testimony provided by Denard Wade, a witness for the Respondent, to be credible." It cited Denard's demeanor before the Board and the vague and argumentative manner in which he responded to certain questions.

We conclude that the finding of theft, official misconduct, and making false statements regarding plaintiff's possession of the radios was not against the manifest weight of the evidence.

### C. The Gun

Plaintiff's also contends that the Board's finding of guilt as to charges four through eight, the gun charges, was against the manifest weight of the evidence.

Plaintiff argues that he delivered the weapon to Hastings on January 17, 2005, not January 15. Contradictory evidence was presented as to when plaintiff gave Hastings the gun: Hastings was certain that it was January 15, while plaintiff testified that it was January 17 because his daughter's birthday party was January 15. Plaintiff, his wife, and his brother testified that plaintiff was at the birthday party beginning at 11 a.m. on January 15, but an employee testified that the rink never opened before noon in January 2005. Furthermore, plaintiff's own DVD of the birthday party showed that the party began at 1:13 p.m. To the

1-06-2911

extent that plaintiff relies on his cellular phone records, which seem to support his version of when calls were made, we note that the Board weighed the evidence and specifically chose to believe Hastings. Also, as mentioned above, the Board found that Denard lacked credibility. Finally, whether plaintiff agreed to loan or sell the Glock to Hastings is irrelevant; either way, the gun was out of his possession on January 15, 2005.

Plaintiff also claims that when Mobley told him to produce the weapon on January 18, 2005, he did not give a direct order. Plaintiff does not cite any authority in support of the proposition that Mobley's instruction was not an order. See *Feret*, 363 Ill. App. 3d at 541. We further note that Rule 2.13, the rule plaintiff was charged with violating, requires employees to "promptly obey all lawful orders and direction given by supervisors and radio dispatchers." Therefore, even assuming that Mobley only gave him a "direction" instead of a "direct order," plaintiff still violated the rule. Furthermore, although the first dispatcher told him that he did not have to produce the weapon because it was removed from LEADS, Cunningham testified that she listened to the tape of the conversation between plaintiff and Powell and told plaintiff that he would need to bring the gun in before it could be cancelled from LEADS. Plaintiff said okay.

Plaintiff also argues that Mazariegos, who was in charge of the investigation, was prejudiced and biased because he did not like plaintiff. Mazariegos actually testified that he did not like plaintiff as a police officer but did like him on a personal level. Plaintiff also contends that Mazariegos was involved with his personnel file, which was incorrect in terms of plaintiff's discipline and commendations. However, even if plaintiff's personnel file was incorrect, plaintiff was permitted to testify as to the correct discipline record and submitted a number of commendations into evidence.

-13-

1-06-2911

In support of his argument that Mazariegos was biased, plaintiff cites *Polk v. Board of Trustees of the Police Pension Fund of the City of Park Ridge*, 253 Ill. App. 3d 525 (1993). In *Polk*, we reversed the Board's decision when the testimony of a witness that was "essential to the Board's decision" was seriously undermined by her interpersonal differences with the plaintiff. The testimony of the witness of a conversation that allegedly occurred 2.5 years before she testified, subject to the other infirmities, was "insufficient to overcome the unrebutted testimony of the plaintiff's witnesses." *Polk*, 253 Ill. App. 3d at 539. Here, the Board relied little on Mazariegos's testimony; indeed, the case was largely a credibility contest between plaintiff and his family and other police personnel.

Therefore, we find that the Board's finding of guilty is not contrary to the manifest weight of the evidence.

### D. Cause to Terminate Plaintiff's Employment

We must next determine whether the factual findings are sufficient to support the Board's conclusion that "cause" exists for plaintiff's discharge. *Valio*, 311 Ill. App. 3d at 330. "Cause" has been defined as some substantial shortcoming that renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and that the law and sound public opinion recognize as good cause for his no longer holding the position. *Valio*, 311 Ill. App. 3d at 330. The Board, and not the reviewing court, is in the best position to determine the effect of the officer's conduct on the department. *Valio*, 311 Ill. App. 3d at 330. Therefore, we must give the Board's determination of "cause" considerable deference. *Valio*, 311 Ill. App. 3d at 330-31. Furthermore, a reviewing court may not decide whether a less stringent punishment is appropriate and may not reverse unless the Board's decision is arbitrary

-14-

1-06-2911

and unreasonable or unrelated to the requirements of service. *Valio*, 311 Ill. App. 3d at 331.

The Board found sufficient cause to terminate plaintiff's employment with the department. Plaintiff was found guilty of theft, insubordination, making false statements, and being unable to perform his official duties. Where a single violation of department rules authorizes dismissal (*Valio*, 311 Ill. App. 3d at 331), we affirm the Board's decision to terminate plaintiff's employment.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court, which affirmed the Board's order that plaintiff be discharged.

Affirmed.

MURPHY, J., with CAMPBELL, and O'BRIEN, JJ., concurring.

09/08/05  THU 10:06 FAX 6303694848      JAMES, GUSTAFSON & THOMPS      ☑003
Sep 06 05 11:17a       b                      7083430700              P.4

FILED-3                                                    #00405

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

ARIAN L. WADE ,

                              Plaintiff,   )

vs.                                  )    No.

BOARD OF FIRE AND POLICE COMMISSIONERS )
OF THE VILLAGE OF MAYWOOD, ILLINOIS,    )
CHARLES ANDERSON, individually and chairman )
of the Board of Fire and Police Commissioners of the )
Village of Maywood, Illinois, GLORIA CLAY,   )
LORETTA COLLINS, REUBEN ROLLE, and JEFF )
LOWENTHAL, individually, and members of the  )
Board of Fire and Police Commissioners of the Village )
of Maywood, Illinois, and JAMES E. COLLIER, JR., )
Chief of Maywood Police Department,          )

                           Defendants.  )

05CH14832

## COMPLAINT FOR ADMINISTRATIVE REVIEW

NOW COMES the plaintiff, Arian L. Wade, by his attorney, Stanley H.

Jakala, complaining of the defendants, Board of Fire and Police Commissioners of

the Village of Maywood, Illinois,  Charles Anderson, individually and chairman of

the Board of Fire and Police Commissioners of the Village of Maywood, Illinois,

Gloria Clay, Loretta Collins, Reuben Rolle, Jeff Lowenthal, individually and

members of the Board of Fire and Police Commissioners of the Village of

Maywood, Illinois, and James E. Collier, Jr., Chief of Maywood Police

Department, and states as follows:

       1.     On August 11, 2005, an administrative decision was rendered by the

Board of Fire and Police Commissioners of the Village of Maywood, Illinois,

Charles Anderson, individually and chairman of the Board of Fire and Police



EXHIBIT
C

Commissioners of the Village of Maywood, Illinois, Gloria Clay, Loretta Collins,

Reuben Rolle, and Jeff Lowenthal, individually and members of the Board of Fire

and Police Commissioners of the Village of Maywood, Illinois, which decision

was received by the plaintiff, Arian L. Wade, on August 23, 2005. A copy of said

decision is marked Exhibit A herein.

   2.     The plaintiff desires judicial review of the final decision of the

administrative agency by which the plaintiff was terminated as a police officer for

the Village of Maywood, Illinois, police department.

   3.     Judicial review is sought for the reason that the decision is both

contrary to law and contrary to the actual facts of the case, and is arbitrary and

capricious.

   4.     The defendant, James E. Collier, Jr. Chief of Maywood Police

Department, is an interested or necessary party to these proceedings.

   5.     The defendants, the Board of Fire and Police Commissioners of the

Village of Maywood, Illinois, Charles Anderson, individually and chairman of the

Board of Fire and Police Commissioners of the Village of Maywood, Illinois,

Gloria Clay, Loretta Collins, Reuben Rolle, and Jeff Lowenthal, individually and

members of the Board of Fire and Police Commissioners of the Village of

Maywood, Illinois, are hereby requested to file the record of proceedings had or

considered before the Board of Fire and Police Commissioners of the Village of

Maywood, Illinois, pertaining to the entry of the aforementioned decision, together

with whatever evidence, exhibits, or other matters that were submitted to hearing officers during the course of all the hearings.

WHEREFORE, plaintiff, ARIAN L. WADE, respectfully prays:

A.    That the record of terminating the plaintiff as a police officer for the Village of Maywood, Illinois, had or considered before the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, Charles Anderson, individually and chairman of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, Gloria Clay, Loretta Collins, Reuben Rolle, and Jeff Lowenthal, individually and members of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, be judicially reviewed.

B.    That the decision of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, Charles Anderson, individually and chairman of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, Gloria Clay, Loretta Collins, Reuben Rolle, and Jeff Lowenthal, individually and members of the Board of Fire and Police Commissioners of the Village of Maywood, Illinois, be reversed.

C.    That the plaintiff be granted such other further relief as he would be entitled to under the law.

_____
Arian L. Wade, Plaintiff

3

STATE OF ILLINOIS      )
                       ) SS
COUNTY OF COOK         )

    I, Arian L. Wade, after first being duly sworn upon oath, depose and state that I have read the foregoing Complaint for Administrative Review by me subscribed, that I know the contents thereof, and that the same is true in substance and in fact.

_____

Subscribed and sworn to before me this 30 day of August , 2005.

_____
Notary Public

OFFICIAL SEAL
DANIEL CALLAHAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 12-01-08

_____
                                   Stanley H. Jakala
                                   Attorney for Plaintiff

Stanley H. Jakala
3219 South Maple Ave.
Berwyn, Illinois 60402
708-788-5733

4

## No. 1-06-2911

# In the

# Appellate Court of Illinois

## First Judicial District

ARIAN L. WADE,

*Plaintiff-Appellant,*

v.

BOARD OF FIRE AND POLICE COMMISSIONERS OF THE
VILLAGE OF MAYWOOD, ILLINOIS, CHARLES ANDERSON,
individually and chairman of the Board of Fire and Police
Commissioners of the Village of Maywood, Illinois,
GLORIA CLAY, LORETTA COLLINS, REUBEN ROLLE, and
JEFF LOWENTHAL, individually, and members of the Village
of Maywood, Illinois, and JAMES E. COLLIER, JR., Chief of
Maywood Police Department,

*Defendants-Appellees.*

---

Appeal from the Circuit Court of Cook County, Illinois,
County Department, Chancery Division, No. 05 CH 14832.
The Honorable **Philip L. Bronstein**, Judge Presiding.

---

### BRIEF OF PLAINTIFF-APPELLANT

---

STANLEY H. JAKALA
3219 South Maple Avenue
Berwyn, Illinois 60402
(708) 788-5733

*Attorney for Plaintiff-Appellant*

---

Midwest Law Printing Company/Photex — Chicago — (312) 431-0185
**Oral Argument Requested**

